# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DISTRICT OF COLUMBIA,                          :

               Plaintiff,                    :

       v.                                      :        Civil Action No.  08-1218-ESH

GROUP HOSPITALIZATION AND              :
MEDICAL SERVICES, INC., *et al.,*
                              :

            Defendants.

## PLAINTIFF DISTRICT OF COLUMBIA'S
## COMBINED MOTION TO REMAND AND RESPONSE TO
## DEFENDANTS' RESPONSE TO COURT'S JULY 21, 2008 ORDER[1]

Plaintiff District of Columbia respectfully moves this Honorable Court to remand

this case to the Superior Court of the District of Columbia on the basis of lack of subject

matter jurisdiction.  28 U.S.C. § 1447(c).  This filing is also intended to respond to the

points raised in Defendant's Response to the Court's July 21, 2008, Order.  In that Order,

the Court, in pertinent part, directed Defendants to "show cause why this case presents a

substantial question of federal law."  Minute Order of July 21, 2008.

Defendants' removal of this case was premised on 28 U.S.C. § 1441(a)-(b).

Plaintiff's complaint, however, does not present a federal question.  Therefore,

Defendants are not entitled to invoke the jurisdiction of this Court and this case should be

promptly remanded.  28 U.S.C. § 1447(c) ("[i]f at any time before final judgment it

appears that the district court lacks subject matter jurisdiction, the case shall be

remanded").

---

[1] This document is intended by Plaintiff to be both a "Motion to Remand," pursuant to 28 U.S.C. § 1447(c), and a "Response to Defendants' Response to the Court's July 21, 2008," and, therefore, consistent with prior direction from the Clerk, it will be filed twice, once under each heading.

In support of its Combined Motion to Remand and Response to Defendants'
Response to the Court's July 21, 2008, Plaintiff respectfully refers the Court to the
accompanying Memorandum of Points and Authorities.   A proposed Order is also
submitted herewith.

Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


_____/s/_____
ELLEN A. EFROS, D.C. Bar No. 250746
Assistant Deputy Attorney General
Chief, Equity Section I
Civil Litigation Division


_____/s/_____
BENNETT RUSHKOFF, D.C. Bar No. 386925
Senior Counsel for Public Advocacy
Consumer and Trade Protection Section
Direct Dial (202) 727-5173
Fax:  (202) 727-0431
Email:  bennett.rushkoff@dc.gov


_____/s/_____
JACQUES P. LERNER, D.C. Bar No. 440998
Assistant Attorney General
441 Fourth Street, N.W.
Washington, D.C.  20001
Direct Dial:  (202) 724-1342
Fax:  (202) 727-0431
Email: jacques.lerner@dc.gov

**ATTORNEYS FOR**
**AUGUST 15, 2008**                **PLAINTIFF DISTRICT OF COLUMBIA**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DISTRICT OF COLUMBIA, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No.  08-1218-ESH |
| GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC., *et al.,* | : | |
| | : | |
| Defendants. | | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF PLAINTIFF DISTRICT OF COLUMBIA'S
COMBINED MOTION TO REMAND AND RESPONSE TO
DEFENDANTS' RESPONSE TO COURT'S JULY 21, 2008 ORDER**

**PRELIMINARY STATEMENT**

This case should be remanded to the Superior Court of the District of Columbia

because it does not present a federal question, substantial or otherwise.[1]  Plaintiff District

of Columbia's complaint is intended to rehabilitate the practices of Defendant Group

Hospitalization and Medical Services, Inc.[2] as a local, charitable insurer because it is

operating with an excessive "surplus," as defined under District insurance law.  The two

counts of the complaint are:  *one,* a willful violation of charter by an insurer domiciled in

the District[3] under D.C.

---

[1] 28 U.S.C. § 1447(c) ("[i]f at any time before final judgment it appears that the district court lacks subject
matter jurisdiction, the case shall be remanded").

[2] Hereinafter "GHMSI."

[3] In 1993, Congress amended GHMSI's charter to state that it is domiciled in the District.  P.L. 103-127
(Oct. 29, 1993).

Code § 31-1310, and, *two,* a common law breach of charitable trust.[4]  Neither count

raises a significant federal issue, if any, and the fact that Defendant GHMSI is federally

chartered changes nothing.

　　　　In point of fact, under controlling Supreme Court case law, the language of

GHMSI's charter *since its founding in 1939* – which allows the corporation to "sue and

be sued, plead and be impleaded in any court of law or equity of competent jurisdiction"[5]

– means that federal question jurisdiction cannot be based on the mere fact that GHMSI

is federally chartered.[6]  Defendants, in their response to the Court's Minute Order of July

21, 2008,[7] do not acknowledge this point, instead belaboring to find a federal question

based on a purported need to *interpret* the federal charter.[8]  By amending GHMSI's

charter in 1993, however, to provide that the corporation shall be domiciled in the District

and "shall be licensed and regulated by the District of Columbia in accordance with the

laws and regulations of the District of Columbia," Pub. L. 103-127, §§ 138(a) and (b)(1)

---

[4] *See* Docket #1 and #4, Complaint for Declaratory Relief, Order of Rehabilitation, and Other Equitable Relief.

[5] Pub. L. No. 395, § 1, 53 Stat. 1412 (1939).

[6] *See American Nat'l. Red Cross v. S. G.,* 505 U.S. 247 (1992).

[7] Minute Order of July 21, 2008 ("On or before August 4, 2008, defendants shall show cause why this case presents a substantial question of federal law.  *See Empire Healthchoice Assur., Inc. v. McVeigh,* 547 U.S. 677 (2006).").

[8] *See* Defendants' Response to the Court's July 21, 2008, Order (hereinafter "Response") *passim* (discussing *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677 (2006); *Grable & Sons Metal Prod., Inc. v. Darue Engineering & Mfg.,* 545 U.S. 308 (2005)).  Even under these cases, there is no substantial federal question presented by Plaintiff's complaint.

(1993), Congress clearly indicated that it intended issues of corporate governance to be

addressed under District law.  Consequently, the District's core allegations in this case –

that Defendants have operated GHMSI "for other than nonprofit purposes" and "contrary

to its mission as a charitable and benevolent institution" and that Defendants have

breached "the charitable trust applicable to these assets," Complaint ¶¶ 28, 31 – raise

only District-law claims.[9]

     For all these reasons, and those set forth in greater detail below, the Court is

respectfully urged to grant Plaintiff's motion and remand this case to the Superior Court

of the District of Columbia.


## BACKGROUND

## I.    GHMSI IS A LOCAL, CHARITABLE INSURER SUBJECT TO LICENSING AND REGULATION BY THE DISTRICT OF COLUMBIA

     GHMSI is a non-profit corporation headquartered in the District of Columbia.  Its

primary business is selling health insurance and administering health plans in the District,

as well as in Maryland and Northern Virginia.[10]  Defendant CareFirst, Inc. ("CareFirst"),

a Maryland-based, non-profit holding company, has controlled and managed GHMSI's

activities since 1997.[11]  Congress chartered GHMSI in 1939 as "a charitable and

benevolent institution" that "shall not be conducted for profit, but shall be conducted for

---

[9] *Cf. Jackson Transit Authority v. Transit Union*, 457 U.S. 22-24 (1982) (congressional intent determines whether rights created by federal statute give rise to federal-law or state-law claims).

[10] Complaint ¶ 4.

[11] *Id.* ¶ 5.

the benefit of [its] certificate holders."[12]  It was the original charter language which

provided that GHMSI may "sue and be sued, plead and be impleaded in any court of law

or equity of competent jurisdiction."[13]

In 1993, Congress amended GHMSI's charter to provide that the corporation shall

be domiciled in the District and "shall be licensed and regulated by the District of

Columbia in accordance with the laws and regulations of the District of Columbia."[14]

Congressman Pete Stark, an amendment supporter, stated on the House floor that the

amendment was aimed at ensuring that the District had regulatory oversight of GHMSI's

business practices and finances:

> In 1939, when Congress first granted the charter to GHMSI's predecessor, Group Hospitalization, Inc., it did not foresee the severe impact that an exemption from most D.C. insurance laws and regulations would have on this insurer.  Fifty years later, imprudent business practices and fiscal irresponsibility carried out by GHMSI officers began to jeopardize its solvency and the security of its policyholders.
>
> The District of Columbia's superintendent of insurance testified during last year's congressional investigation hearings that GHMSI was beyond, the scope of most of his authority.  He cannot, for example, require GHMSI to submit to an outside auditor's review or one by [h]is own examiner.  He is also unable to apply the District's insurance solvency standards on the GHMSI plan.
>
> The amendment to the charter included in the conference report before us today permanently establishes the District of Columbia as the legal domicile of GHMSI and ensures its regulation in accordance with the laws and regulations of the District of Columbia

139 Cong. Rec. H8210-02 (Oct. 20, 1993).

---

[12] Pub. L. No. 395, §§ 3 and 8, 53 Stat. 1412 (1939).

[13] Pub. L. No. 395, § 1, 53 Stat. 1412 (1939).

[14] Pub. L. No. 103-127, §§ 138(a) and (b)(1) (1993).

## II. PLAINTIFF'S COMPLAINT ALLEGES ONLY VIOLATIONS OF DISTRICT OF COLUMBIA LAW; FEDERAL LAW IS NOT IMPLICATED IN ANY WAY

GHMSI's business practices and finances are the primary focus of the District's complaint, which details the dramatic growth in GHMSI's adjusted risk-based capital, commonly referred to as "surplus." Specifically, the District alleges that, since year-end 2005, the level of GHMSI's surplus has been more than four times the minimum level that "state insurance regulators typically expect an insurer to maintain," and more than two times the minimum level that the national Blue Cross and Blue Shield Association requires under its "more conservative standard."[15]

According to the complaint, the District of Columbia's Attorney General and insurance regulators, as well as Maryland's insurance regulators, "repeatedly put [Defendants] on notice . . . that they needed to change course and return to their charitable and nonprofit missions."[16] The complaint concludes that GHMSI has been "building and maintaining its surplus at the expense of its obligations to serve the public," and that GHMSI must be compelled by a regulatory or judicial authority to "rededicate itself to nonprofit purposes and to its charitable mission of promoting public health."[17] Ultimately, the District's allegations are that Defendants have operated GHMSI "for other than nonprofit purposes," "contrary to its mission as a charitable and

---

[15] Complaint ¶¶ 13 and 24.

[16] *Id.* ¶ 15.

[17] *Id.* ¶ 26.

benevolent institution," and that Defendants have breached "the charitable trust applicable to these assets."[18]

The first count of the District's two-count complaint, alleging that Defendants' operation of GHMSI is in violation of its charter, provides "grounds" under District of Columbia law – D.C. Code § 31-1310(9) – for an order appointing the District's Insurance Commissioner as GHMSI's "rehabilitator."[19]  The second count of the complaint alleges that Defendants "are in breach of the charitable trust" to which "GHMSI's assets are subject *under the common law*."[20]  Both counts rely in part on provisions in GHMSI's charter declaring the corporation to be a "charitable and benevolent institution" that "shall be conducted for the benefit of [its] certificate holders."[21]  For the reasons that follow, it is clear that these allegations do not present or implicate a federal question, much less a substantial one.

## ARGUMENT

## I.    THE LEGAL STANDARD TO BE APPLIED

Defendants' removal of this case was premised on 28 U.S.C. § 1441(a) and (b), which allows for removal of a state court-filed action of which the district courts have

---

[18] *Id.* ¶¶ 28, 31.

[19] *Id.* ¶ 28.

[20] *Id.* ¶¶ 30-31 (emphasis added).

[21] *Id.* ¶ 7; Pub. L. No. 395, §§ 3, 8, 53 Stat. 1412 (1939).

original jurisdiction,[22] and which is founded on a claim or right "arising under the Constitution, treaties or laws of the United States."[23]  Because the complaint is not founded on any such claim or right, Plaintiff seeks remand under 28 U.S.C. § 1447(c).[24]

The presence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that jurisdiction exists only when a federal question is "presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987).  As a result of resistance to the exercise of federal jurisdiction, "[t]he burden of establishing [jurisdiction] for purposes of removal is on the party seeking removal." *Mitchell v. Mirant Calif., LLC,*  No. C 07-05847, 2008 U.S. Dist. LEXIS 16711 (N.D. Calif., Feb. 21, 2008) at *4 (citing *Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir. 2004)).  *Accord Kokkonen v. Guardian Life Ins. Co. of Amer.,* 511 U.S 375, 377 (1994)) (stating "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party

---

[22] Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

[23] The statute provides in pertinent part:

§ 1441.  Actions removable generally

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.…

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.…

[24] The statute provides in pertinent part:

§ 1447.  Procedure after removal generally
….
(c) A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).  If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.…

- 7 -

asserting jurisdiction"); *Julien v. CCA of Tenn., Inc.*, 268 F. Supp. 2d 19, 21 (D.D.C. 2003) (stating "Federal courts are courts of limited jurisdiction and therefore the law presumes that 'a cause lies outside of the court's limited jurisdiction'") (citing *Kokkonen*).[25]

## II. GHMSI'S FEDERAL CHARTER IS NOT A SUFFICIENT BASIS FOR FEDERAL JURISDICTION

For its entire existence, GHMSI has been bound by the language in its 1939 charter mandating that it may "sue and be sued, plead and be impleaded in any court of law or equity of competent jurisdiction."[26]  Under *American National Red Cross v. S.G.*, 505 U.S. 247 (1992), a federal charter only confers original federal jurisdiction if it contains a "sue and be sued" provision that expressly authorizes suit in federal court.  In *Red Cross*, plaintiffs filed a state law tort action alleging that one of the plaintiffs contracted AIDS during a blood transfusion.  The Red Cross removed the case to federal court claiming that the "sue and be sued" provision in its charter conferred original federal jurisdiction.  The district court refused to remand, but it certified the question for interlocutory appeal.  The case eventually worked its way up to the Supreme Court, which decided that the Red Cross charter did confer federal jurisdiction, thereby permitting the organization to remove any state-law action to federal court.

The Supreme Court explained that its past cases construe the "sue and be sued provisions in federal charters to "[place] Congress on prospective notice of the language

---

[25] Plaintiff respectfully notes that if subject matter jurisdiction does not exist, remand is mandatory.  If the federal court lacks subject-matter jurisdiction, remand is mandatory.  *Julien,* 268 F. Supp. at 21 (citing *Republic of Venez. v. Philip Morris, Inc.,* 287 F.3d 192, 196 (D.C. Cir. 2002); *Johnson-Brown v. 2200 M St. LLC,* 257 F. Supp. 2d 175 (D.D.C. 2003)).

[26] Pub. L. No. 395, § 1, 53 Stat. 1412 (1939).

necessary and sufficient to confer jurisdiction." *Id.* at 252. The Court emphasized that the Red Cross charter was amended in 1947 to include the phrase "State or Federal," thereby evidencing congressional intent to confer federal jurisdiction. *Id.* at 251-52. The Supreme Court concluded that a "sue and be sued" provision of a federal corporate charter "may be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts." *Id.* at 255.

In this case, GHMSI's charter provides it may "sue and be sued, plead and be impleaded in any court of law or equity of competent jurisdiction." Under *Red Cross,* this language precludes federal jurisdiction based solely on the fact that GHMSI is federally chartered. Defendants, however, have not asserted that this language creates federal jurisdiction, but, instead, attempt to finesse the issue by arguing that Plaintiff's claims require *interpretation* of the charter itself and that therein lie the federal issues.[27] The Supreme Court has held, however, that the plaintiff is the "master of the claim": he or she may avoid federal jurisdiction by exclusive reliance on state law, and there is a strong presumption against removal. *Caterpillar, Inc. v. Williams,* 482 U.S. at 392, 398. Federal courts, therefore, construe the removal statutes restrictively, "so as to limit removal jurisdiction."[28] Finally, the holding urged by Plaintiff is consistent with the 1993 amendments to GHMSI's charter, providing that "[t]he District of Columbia shall be the legal domicile of the corporation," and that "[t]he corporation shall be licensed and regulated by the District of Columbia in accordance with the laws and regulations of the

---

[27] *See* Defendants' Response to the Court's July 21, 2008, Order (hereinafter "Response") *passim* (discussing *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677 (2006); *Grable & Sons Metal Prod., Inc. v. Darue Engineering & Mfg.,* 545 U.S. 308 (2005)).

[28] *Mitchell v. Mirant California, LLC,* No. C 07-05847, 2008 U.S. Dist. Lexis 16711 (N.D. Cal. Feb. 21, 2008) (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-09 (1941)). *See also Batoff v. State Farm Ins. Co.,* 977 F.2d 848, 851 (3d Cir. 1992)(§ 1441(c) should "be strictly construed against removal and all doubts should be resolved in favor of remand").

District of Columbia."[29]  That is exactly what the complaint does here, raising only local

law claims, which, by virtue of GHMSI's charter, may be heard in the local courts.

## III.    CONGRESS INTENDED THAT ISSUES CONCERNING GHMSI'S GOVERNANCE BE ADDRESSED UNDER DISTRICT LAW

Defendants devote their entire brief to a lengthy discussion of *Empire*

*Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677 (2006), and *Grable & Sons*

*Metal Prod., Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005)).  Foremost among

their points is their assertion that the complaint "necessarily raises a disputed federal

issue"[30] because Plaintiff "cannot obtain relief on either count without this Court

addressing, interpreting, and resolving critical language in GHMSI's federal charter."[31]

Defendants assert that the complaint seeks to prove GMHSI violated its charter by (1)

maintaining a surplus, (2) failing to redistribute an amount to "promote public health,"

(3) failing to make "additional charitable donations," (4) breaching "some unspecified

common-law charitable-trust duty,"[32] which, they say, require interpretations of

GMHSI's charter.  Even if this were true, which Plaintiff denies, Defendants have failed

to explain why such issues could not be resolved without reference to federal law.[33]  In

---

[29] Pub. L. 103-127, §§ 138(a) and (b)(1) (1993).

[30] Response at 10-12.

[31] *Id.* at 10.

[32] *Id.* at 11.

[33] For example, the existence of a "surplus" can certainly be measured by reference to insurance industry best practices.  Surely this was one consideration used by GHMSI's own actuarial consultant when he testified on March 24, 2005, before the District of Columbia Department of Insurance, Securities, and Banking, that "there is some amount [of surplus] which would not be considered reasonable."  Document 6-2, Report of the District of Columbia Department of Insurance, Securities, and Banking, Lawrence H. Mirel, Commissioner, *In the Matter of:  Inquiry into the Charitable Obligations of GHMSI/CareFirst in the District of Columbia. Compare Bender v. Jordan,* 525 F. Supp. 2d. 198, 205 (D.D.C. 2007) (finding federal

point of fact, even under Defendants' construction of what the complaint seeks to prove, it is clear that no federal issues are raised.

Whether a dispute over the interpretation of GHMSI's congressional charter raises questions of federal law or District law depends on congressional intent. *See Jackson Transit Authority v. Transit Union*, 457 U.S. 15, 22-24 (1982) (declining to find federal question jurisdiction). In *Jackson*, the Supreme Court carefully considered the legislative history of a federal mass transportation law in determining that "Congress intended that labor relations between transit workers and local governments would be controlled by state law." Here, any ambiguity as to congressional intent was resolved in 1993, when Congress amended GHMSI's charter to provide that the corporation would be licensed and regulated by the District in accordance with its own laws.

In this case, the analysis of congressional intent should be sensitive to the fact that the District's claims – like the insurance carrier reimbursement claims that the Supreme Court found insufficient to establish federal jurisdiction in *Empire Healthchoice Assurance, Inc. v. McVeigh* – "are the sort ordinarily resolved in state courts." 547 U.S. 677, 683 (2006). Nonprofit health insurers doing business as Blue Cross have long been subject to *state* regulation – indeed, "a much higher degree of state regulation than have commercial health insurers or other corporations," *Blue Cross of Iowa v. Foudree*, 606 F. Supp. 1574, 1576 (S.D. Iowa 1985) – and, as a result, disputes involving the scope of government oversight are normally state law disputes. For example, in *Blue Cross of Kansas v. Bell*, the Kansas Supreme Court, having analogized nonprofit health insurers to "public common carriers under [the] control of the Kansas Corporation Commission,"

---

jurisdiction where vindication of contractual rights against federal savings bank could not be resolved without reference to terms of federal regulation).

applied Kansas law in reviewing a state insurance commissioner's findings that a Blue was maintaining "excessive deficiency reserves," resulting in excessive rates. 227 Kan. 426, 438-42, 607 P.2d 498, 507-10 (Kan. 1980). The primary examples of Blue Cross oversight cases raising federal law issues are those involving federal constitutional challenges to states' regulatory schemes.[34]

In recent years, when state attorneys general have litigated claims regarding the charitable status or nonprofit obligations of Blue Cross companies, the cases have been resolved by state courts applying state law principles. *E.g.*, *Blue Cross & Blue Shield of Kansas City v. Nixon*, 26 S.W.3d 218 (Mo. Ct. App. 2000) (Kansas City Blue had public purpose, qualifying it as a public benefit corporation under Missouri law); *Abbot v. Blue Cross & Blue Shield of Texas*, 113 S.W.3d 753 (Tex. Ct. App. 2003) (Texas Blue not a common-law charity). Issues over the size or use of a Blue Cross company's surplus have also been treated as arising under state law. For example, the Pennsylvania Supreme Court recently held that a Blue's "amassing a . . . surplus that was . . . over and above that necessary . . . to operate properly" gave rise to "claims that the [state] Legislature has empowered the court of common pleas . . . to adjudicate." *Ciamaichelo v. Independence Blue Cross*, 589 Pa. 415, 425, 909 A.2d 1211, 1217 (Pa. 2006). *See In re Excess Surplus Status of Blue Cross & Blue Shield of Minnesota*, 624 N.W.2d 264 (Minn. 2001) (considering whether Blue's plan to correct excess surplus condition met requirements of Minnesota statute).

Moreover, one cannot presume from the fact that GHMSI is chartered by Congress that there is any "relevant federal interest [that] warrants displacement of state

---

[34] *See, e.g.*, *Foudree* (Blue's constitutional challenge to Iowa statute governing composition of Blue's board); *Blue Cross and Blue Shield of Michigan*, 422 Mich. 1, 367 N.W.2d 1 (Mich. 1985) (Blue's constitutional challenge to Michigan's Nonprofit Health Care Corporation Reform Act).

law." *Empire Healthchoice*, 547 U.S. at 692. By exercising its local legislative authority over the District of Columbia, Congress has created local corporations that are analogous to the corporations created by state legislatures. *See Bd. of Dirs. of the Wash. City Orphan Asylum v. Bd. of Tr. of the Wash. City Orphan Asylum*, 798 A.2d 1068, 1079 (D.C. 2002) (noting that corporation was product of Congress' "local legislative authority"). *Cf. District Prop. Assoc. v. District of Columbia*, 743 F.2d 21 (D.C. Cir. 1984) ("When Congress acts as the local legislature for the District of Columbia . . . enactments should . . . be treated as local law"). When a dispute over the governance of such a corporation required construing the Act of Congress that created the corporation, the D.C. Court of Appeals stated that it would "use the same rules of construction that we use to examine articles of incorporation adopted pursuant to general law." *Id*. at 1079 n.11. The Court then proceeded to apply the same rules as to standing and as to statutory construction that would have been applicable to any corporation created under state law. *See id*. at 1075-76, 1079-80.

In another case involving an organization that was "technically a charitable corporation chartered by Act of Congress," a District court looked to general charitable trust principles when issues arose as to the enforcement of the organization's charitable obligations. *Hooker v. Edes Home*, 579 A.2d 608, 611 n.8 (D.C. 1990) (accepting trial court's and parties' view that "rules applying to charitable trusts govern"). These common law principles are derived from state law precedents that are summarized in, among other treatises, the Restatement (Second) of Trusts. *See id.* at 612-13.

By providing that GHMSI would be domiciled in the District of Columbia and "licensed and regulated by the District of Columbia in accordance with the laws and

regulations of the District of Columbia," [35]  Congress expressed its intent that GHMSI be governed by District law just as the other Blues are governed by the state laws of their states of domicile.   Nothing in GHMSI's charter suggests that Congress intended to create a special body of federal law that would apply to GHMSI alone.  Nor is there any reason to believe that Congress "meant to federalize a good portion" of the law of nonprofits or charities "without passing any substantive legislation upon the subject." *A.I. Trade Finance, Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1460 (D.C. Cir. 1995) (declining "to develop a federal commercial law" to govern "international banking transactions of federally chartered institutions").

Finally, there is no "national interest in providing a federal forum" for GHMSI-related litigation that is "sufficiently substantial to support the exercise of federal-question jurisdiction."  *Grable,* 545 U.S. at 310 (recognizing "national interest in providing a federal forum for federal tax litigation").  In *Grable*, the Supreme Court held that federal question jurisdiction over the issue of how the Internal Revenue Service should notify a taxpayer of a tax delinquency seizure was justified by the federal government's "strong interest" in effective tax collection; therefore, federal question jurisdiction was "consistent with congressional judgment about the sound division of labor between state and federal courts."  *Id.* at 313-15.  By contrast, federal question jurisdiction is not warranted in a case, like this one, involving regulatory authority that Congress decided would be exercised *not by a federal agency on behalf of the nation as a whole, but by the District in accordance with its own laws.*  Moreover, in contrast to the

---

[35] Pub. L. No. 103-127, §§ 138(a) and (b)(1) (1993).

tax procedure issue in *Grable*, the surplus issue in this case is "fact-bound and situation-specific." *Empire Healthchoice*, 547 U.S. at 701.

The 1993 amendment to GHMSI's charter would have little or no meaning if GHMSI, when faced with regulatory interpretation to its dissatisfaction, could retreat to the federal courts. As Rep. Stark stated: "[t]he amendment to the charter included in the conference report before us today permanently establishes the District of Columbia as the legal domicile of GHMSI and ensures its regulation in accordance with the laws and regulations of the District of Columbia.[36] For all these reasons, Defendants' analysis under *Empire* and *Grable* is unavailing. Given that the "sue and be sued" provision of the GHMSI's charter is insufficient to support federal jurisdiction,[37] and given Congress' express intent that GHMSI be regulated under District law, not even a *bona fide* issue as to the meaning of GHMSI's charter would be sufficient to support federal jurisdiction in this case.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully urges the Court to grant its motion and promptly remand this case to the Superior Court of the District of Columbia.

---

[36] 139 Cong. Rec. H8210-02 (Oct. 20, 1993).

[37] Plaintiff also notes that, to the extent some interpretation of Federal law is required in this case, which Plaintiff disputes, the District of Columbia Courts are fully capable of undertaking that task, and the mere possibility of that occurrence is insufficient to create Federal jurisdiction.

Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


_____/s/_____
ELLEN A. EFROS, D.C. Bar No. 250746
Assistant Deputy Attorney General
Chief, Equity Section I
Civil Litigation Division


_____/s/_____
BENNETT RUSHKOFF, D.C. Bar No. 386925
Senior Counsel for Public Advocacy
Consumer and Trade Protection Section
Direct Dial (202) 727-5173
Fax:  (202) 727-0431
Email:  bennett.rushkoff@dc.gov


_____/s/_____
JACQUES P. LERNER, D.C. Bar No. 440998
Assistant Attorney General
441 Fourth Street, N.W.
Washington, D.C.  20001
Direct Dial:  (202) 724-1342
Fax:  (202) 727-0431
Email: jacques.lerner@dc.gov
**ATTORNEYS FOR**
**AUGUST 15, 2008          PLAINTIFF DISTRICT OF COLUMBIA**

**- 16 -**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DISTRICT OF COLUMBIA, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No.  08-1218-ESH |
| GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC., *et al.,* | : | |
| | : | |
| Defendants. | | |

**ORDER**

Upon consideration of Defendants' Response to the Court's July 21, 2008, Order, Plaintiff's Combined Motion to Remand and Response to Defendant's Response to the Court's July 21, 2008, Defendants' opposition to said motion, and Plaintiff's reply in support thereof, if any, it is, this _____ day of _____, 2008, for the reasons set forth by Plaintiff in its papers,

**ORDERED** that the motion be, and the same hereby is, **GRANTED**; and it

**FURTHER ORDERED**, pursuant to 28 U.S.C. § 1447, that this case is hereby **REMANDED** to the Superior Court of the District of Columbia.

_____
UNITED STATES DISTRICT JUDGE