# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DISTRICT OF COLUMBIA,<br>Plaintiff, | ) ) ) | |
| v. | ) ) ) | Case No: 1:08-cv-01218<br>Judge Ellen S. Huvelle |
| GROUP HOSPITALIZATION AND MEDICAL<br>SERVICES, INC., et al.,<br>Defendants. | ) ) ) ) | **OPPOSITION TO MOTION<br>TO REMAND** |
|  | ) | **ORAL ARGUMENT REQUESTED** |

## OPPOSITION TO MOTION TO REMAND

Defendants Group Hospitalization and Medical Services, Inc. ("GHMSI") and CareFirst,

Inc. ("CareFirst") hereby oppose plaintiff District of Columbia's motion to remand this case to

D.C. Superior Court.

In response to this Court's July 21, 2008 Order directing briefing on jurisdictional issues,

CareFirst and GHMSI provided a detailed analysis of why the Court has jurisdiction over this

action under the governing federal-question case law – most notably Empire Healthcare

Assurance, Inc. v. McVeigh, 547 U.S. 677 (2006), and Grable & Sons Metal Products v. Darue

Engineering & Manufacturing, 545 U.S. 308 (2005). In its recent submission,[1] the District

largely fails to address the key federal-question issues on which this Court correctly focused in

its Order and which CareFirst and GHMSI addressed in their response. The District fails, for

instance, to rebut GHMSI and CareFirst's showing that the federal question presented is

"substantial," see Response to Court's July 21, 2008 Order at 12-14 ("GHMSI Response"), and

that this Court could resolve it without tipping the federal-state balance of judicial authority, see

---

[1]     The District jointly characterizes its submission as a motion to remand and as a
"response" to CareFirst's and GHMSI's response to the Court's July 21 Order.

id. at 15.  And one of the only arguments the District <u>does</u> offer that is relevant to the <u>Empire</u>/<u>Grable</u> analysis – that jurisdiction is lacking because this case would not require the Court to interpret GHMSI's federal charter, <u>see</u> Mot. 10 – is demonstrably wrong.  The interpretation of GHMSI's federal charter forms the core of the District's own Complaint, it is heavily disputed, and it is at the heart of this case.

Instead of engaging the actual jurisdictional issues presented, the District chooses to set up two straw men and knock them down.  First, the District argues at length that GHMSI does not have automatic, across-the-board federal-court access of the sort federally chartered entities enjoy when their charters' sue-and-be-sued clauses contain the phrase "federal court."  Mot. 2, 8-10; <u>see</u> <u>American Nat'l Red Cross v. S.G.</u>, 505 U.S. 247 (1992).  True enough – but entirely irrelevant to the issue presented here.  GHMSI and CareFirst have never suggested that the sue-and-be-sued clause in GHMSI's federal charter confers the sort of special jurisdictional grant described in <u>Red Cross</u>.  GHMSI and CareFirst instead have invoked garden-variety federal-question jurisdiction because the District's Complaint requires close interpretation of GHMSI's congressional charter, which itself is a federal law.  <u>Red Cross</u> has nothing to do with this case.

Second, the District argues that GHMSI's charter specifies that GHMSI is subject to regulation by the District.  True again; and again irrelevant.  GHMSI does business in the District (and in Maryland and Virginia) and is regulated by the District, but those facts simply do not speak to what Court has jurisdiction over any particular action involving GHMSI.  They therefore do nothing to negate federal-question jurisdiction in a case, like this one, presenting disputes about the meaning of GHMSI's federal charter.  One can well conceive of cases that the District might bring against GHMSI that would not belong in federal court because they do not require interpretation of the federal charter.  But this manifestly is not such a case.  Rather, <u>this</u>

2

case "necessarily raise[s] a stated federal issue, actually disputed and substantial, which [this] federal forum may entertain without disturbing any . . . balance of federal and state judicial responsibilities." <u>Grable</u>, 545 U.S. at 314. It therefore was properly removed.

## ARGUMENT

I.    **THE DISTRICT FAILS TO REBUT DEFENDANTS' SHOWING UNDER <u>EMPIRE</u> AND <u>GRABLE</u>.**

The Court's July 21, 2008 Order asked why this case presents a "substantial question of federal law" under <u>Empire</u>, and CareFirst and GHMSI fully addressed that question in their response. First, the District's Complaint "necessarily raise[s] a disputed federal issue," <u>Grable</u>, 545 U.S. at 314, because the District cannot obtain relief on either of its two counts without this Court interpreting and resolving certain key provisions of GHMSI's Congressional charter. GHMSI Response at 10-12. Second, the federal-law dispute is "substantial" because it is a pure issue of law, it concerns the core mission of an entity that Congress created, and its resolution affects hundreds of thousands of certificate holders in three jurisdictions – the District, Maryland, and Virginia. <u>Id.</u> at 12-14. Finally, because GHMSI's Congressional charter is the only one of which CareFirst and GHMSI are aware that created a federally designed health-benefits corporation, the Court's assertion of jurisdiction would not disturb the federal-state balance of judicial power. <u>Id.</u> at 14-15.

The District's submission fails to join issue with the three-part analysis mandated by <u>Empire</u> and <u>Grable</u>. Indeed, the District's most sustained treatment of the precedent comes in a footnote that cites both cases and then asserts without explanation: "Even under these cases, there is no substantial federal question presented by Plaintiff's complaint." Mot. 2 n.8. That conclusory statement fails utterly to undermine the analysis of <u>Empire</u> and <u>Grable</u> offered in CareFirst and GHMSI's response.

3

The District offers a few other scattered comments that go to the <u>Empire</u>/<u>Grable</u> analysis, but all are without merit.

Most prominently, the District "denies" that its Complaint "requires interpretations of G[HM]SI's charter," and thus argues that no dispute of federal law is presented. Mot. 10; <u>see also id.</u> at 2 (referring to a "purported" need to interpret the charter); <u>id.</u> at 15 & n.37. The District does not (and cannot) elaborate further on this argument, which is belied by its own Complaint. As the District elsewhere observes, its Complaint "alleg[es] that Defendants' operation of GHMSI is in violation of its charter" and that "[b]oth counts rely in part on provisions in GHMSI's charter." <u>Id.</u> at 6. That is an understatement. The gravamen of the District's entire Complaint is that GHMSI's charter requires it to "support . . . charitable, public benefit purposes" over and above service to GHMSI's own certificate holders (the purpose its federal charter specifically articulates) by, among other things, giving tens of millions of dollars of its reserve funds to charity. Complaint ¶ 14, 18. The Complaint even offers its own construction of the charter: "Under the aforementioned Charter provisions, GHMSI's corporate purpose is a charitable one" requiring it to focus on "the promotion of public health." <u>Id.</u> ¶ 8. The first count of the Complaint, entitled "Willful Violation of Charter," alleges that defendants have "willfully violated GHMSI's charter by operating GHMSI . . . contrary to its mission as a charitable and benevolent institution." <u>Id.</u> ¶ 28. The second count alleges that CareFirst and GHMSI have "us[ed] GHMSI's assets inconsistently with its charitable purposes" – charitable purposes the District says are defined by GHMSI's charter. <u>Id.</u> ¶¶ 8, 31. The District's first two prayers for relief ask the Court to "[d]eclare that Defendants have violated GHMSI's charter" and to "[e]njoin Defendants from further violations of GHMSI's charter." Complaint at 12. In all, the Complaint mentions GHMSI's charter nine times and GHMSI's "charitable mission" (the

scope of which the Complaint contends is defined by the charter) no fewer than twenty-eight times.

The Complaint, in sum, focuses tightly on GHMSI's federal charter and relies for its viability on the District's preferred construction of that charter – namely, that GHMSI under its federal charter is legally obligated to do something more than serve its certificate holders. Complaint ¶ 8. CareFirst and GHMSI vigorously dispute the District's construction. GHMSI's federal charter requires that GHMSI's business "be conducted for the benefit of [its] certificate holders," Charter Sec. 3, and the charter's text and legislative history – including seven decades' worth of Congressional statements – make clear that GHMSI fulfills its charitable obligations by benefiting its certificate holders. The charter's meaning therefore is "actually disputed," Grable, 545 U.S. at 314, and the District's unexplained argument that the Complaint somehow can be resolved without interpretation of that charter is groundless.

The District also appears to argue that GHMSI's federal charter is not federal law at all and thus cannot form the basis for federal-question jurisdiction. See, e.g., Mot. 10 (asserting that "[e]ven if [it] were true" that the Complaint requires interpretation of the charter, "Defendants have failed to explain why such issues could not be resolved without reference to federal law"). This argument too is baseless. As CareFirst and GHMSI explained in their response to this Court's July 21 Order, see GHMSI Response at 10-11, a federal charter is a "legislative act[]" of Congress, just like any other federal statute. Board of Dirs., Wash. City Orphan Asylum v. Board of Trs., Wash. City Orphan Asylum, 798 A.2d 1068, 1080 (D.C. 2002). Accord Supreme Lodge K. of P. v. Mims, 241 U.S. 574, 578 (1916) (denying a motion for jurisdictional dismissal because "the case necessarily will turn on the construction of the present charter, an act of Congress"); K.V. Mart Co. v. United Food and Commercial Workers Int'l Union, 173 F.3d 1221,

1225 (9th Cir. 1999) ("Federally-chartered corporations . . are entirely defined by federal law.").
Because Congressional charters are "federal law," <u>K.V. Mart</u>, 173 F.3d at 1225, courts called
upon to adjudicate substantial disputes about their meaning enjoy federal-question jurisdiction
just like they would in any other case turning on a dispute over a federal statute. That is why
federal courts accept jurisdiction over cases just like this one – cases involving a federally-
chartered entity whose charter's meaning is disputed. <u>See, e.g., American Nat'l Theatre & Acad.
v. American Nat'l Theatre Inc.</u>, 472 F. Supp. 2d 487 (S.D.N.Y. 2006) (accepting jurisdiction
where "the plaintiff asserts that the defendant's [action] violates ANTA's exclusive right
pursuant to [its charter,] 36 U.S.C. § 21904").

      Thus, the District's unsupported argument that "[w]hether a dispute over the
interpretation of GHMSI's congressional charter raises questions of federal law or District law
depends on congressional intent," Mot. 11, is simply not correct.   A dispute over the meaning of
a federal charter necessarily raises a question of federal law because such a charter <u>is</u> federal law.
For the same reason, the District is wrong to suggest that jurisdiction would only lie here if
"Congress intended to create a special body of federal law that would apply to GHMSI alone."
<u>Id.</u> at 14. The federal law at issue here is the charter.  The District cites no cases for its novel
argument that a "special body of federal law" is required before the Court may take jurisdiction
to pass upon an issue of federal statutory interpretation.  Nor could it; the law is clearly to the
contrary.  <u>See Mississippi Band of Choctaw Indians v. Holyfield</u>, 490 U.S. 30, 43 (1989) ("[T]he
meaning of a federal statute is necessarily a federal question").

      Finally, the District argues that the national interest in GHMSI is insufficiently
" 'substantial to support . . . federal-question jurisdiction.' " Mot. 14 (quoting <u>Grable</u>, 545 U.S.
at 310).  This is so, the District says, because GHMSI is regulated by the District and not by a

federal agency. Id. But as discussed further below, this argument makes no sense: The fact that Congress gave the District power to regulate GHMSI says nothing about whether a federally-charted corporation such as GHMSI may seek to have disputes about the meaning of its federal charter heard by a federal court. The District also argues that the issue presented in its Complaint is " 'fact-bound and situation-specific.' " Id. at 15 (quoting Empire, 547 U.S. at 701). This assertion is demonstrably incorrect; it could not be clearer from the face of the Complaint that the District's legal theory revolves around the meaning of GHMSI's charter – a "pure issue of law." Empire, 547 U.S. at 700. For this reason, and for the reasons discussed in CareFirst and GHMSI's response to the Court's July 21, 2008 Order, see GHMSI Response at 12-14, the federal issue presented here is substantial.

## II.    THE RED CROSS CASE IS A RED HERRING.

The District proffers as its primary remand argument a non sequitur – namely, that GHMSI does not enjoy automatic federal-court access under American National Red Cross. Red Cross addressed the question whether a federally chartered entity may remove a case to federal court on the sole ground that its sue-and-be-sued clause specified that suits brought by or against the entity may proceed in federal court. Mot. 8-10. The District is quite right about what Red Cross holds, and that GHMSI's charter does not contain the required language in its sue-and-be-sued clause that on its own gives rise to federal jurisdiction. But Red Cross is irrelevant to this case; GHMSI and CareFirst have never claimed they enjoyed automatic federal-court access under the sue-and-be-sued clause of GHMSI's charter.

The Supreme Court in Red Cross announced a special, bright-line rule of federal jurisdiction: When an organization's federal charter has a "sue and be sued" clause that includes the word "federal," that clause "confers original jurisdiction on federal courts over all cases to

which the [organization] is a party, with the consequence that the organization is thereby authorized to remove from state to federal court any state-law action it is defending." 505 U.S. at 248. The word "federal" in the sue-and-be-sued clause, in other words, is a "magic bullet" that gives that organization the right to access federal court in any dispute, no matter how parochial the subject matter. See id. at 257. And the Red Cross Court made clear that this special access is not akin to federal-question jurisdiction pursuant to 28 U.S.C. § 1331. Id. at 258. It wrote that the sued-and-be-sued clause constitutes "a separate and independent jurisdictional grant" not dependent on Section 1331's "arising under" jurisdiction. Id.

Courts applying Red Cross uniformly have understood the case to create a unique "party-based" form of jurisdiction, "independent of any other basis for federal jurisdiction such as diversity or the existence of a federal question." Roe v. Little Co. of Mary Hosp., 815 F. Supp. 241, 242 (N.D. Ill. 1992). Thus, in cases involving an entity like the Red Cross, whose charter's sue-and-be-sued clause contains the word "federal," there are three possible bases for subject-matter jurisdiction: (i) diversity, (ii) "customary federal question jurisdiction" based on the presence of a federal issue in the case, and (iii) the special "ground that federal courts exercise original jurisdiction over a case in which the American National Red Cross is a party." Scott v. American Nat'l Red Cross, 2005 WL 2510456, at *1 (D. Md. 2005). Where this latter Red Cross option is absent, the inquiry simply narrows to the two usual jurisdictional bases – diversity and federal question – and the lack of Red Cross magic words is irrelevant so long as "an independent ground for federal jurisdiction" exists. Knuckles v. RBMG, Inc., 481 F. Supp. 2d 559, 563 (S.D. W. Va. 2007). Accord Cupo v. Community Nat. Bank & Trust Co., 438 F.2d 108, 110 (2d Cir. 1971) (holding that a federal statute providing automatic federal jurisdiction over certain federally chartered corporations "has no applicability" where "there is an independent

federal question"). <u>Red Cross</u>, in short, supplies an additional jurisdictional option; it does not take the usual options away. If an organization's charter meets the <u>Red Cross</u> test, that organization has automatic federal-court access, and removal rights, in every case. But the absence of such "magic words" from a federally-charted corporation's charter in no way inhibits, much less precludes, the corporation from invoking standard bases for federal jurisdiction – whether federal question or diversity.

CareFirst and GHMSI have never relied on <u>Red Cross</u>'s special jurisdictional hook to support removal in this case. Yet the District nevertheless chides CareFirst and GHMSI for not meeting a test CareFirst and GHMSI have not invoked. <u>See id.</u> This argument is illogical. The only consequence of <u>Red Cross</u>'s inapplicability here is that CareFirst and GHMSI, like most defendants, cannot automatically remove to federal court every case filed against them. Instead, they must show that a particular action "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

This case involves just such a showing. As explained above, a federal charter is "federal law," just like any other federal statute. <u>K.V. Mart</u>, 173 F.3d at 1225. Thus, federal courts called upon to interpret such charters have accepted jurisdiction even where the charter did not contain the <u>Red Cross</u> "magic words." In <u>American National Theatre</u>, for instance, the plaintiff's federal charter included a "sue and be sued" clause that did not mention federal courts. 36 U.S.C. § 21903(6); <u>see</u> 472 F. Supp. 2d at 489. But that clause was irrelevant; the case required interpretation of a disputed federal law (the charter), and federal-question jurisdiction therefore was present. Just so here. CareFirst and GHMSI were entitled to remove this case not merely <u>because</u> GHMSI has a federal charter – that would not suffice under <u>Red Cross</u> – but because the <u>interpretation</u> of that charter is at the heart of the District's Complaint.

## III.    THE FACT THAT GHMSI'S CHARTER EMPOWERS THE DISTRICT TO REGULATE GHMSI IS LIKEWISE IRRELEVANT.

The District offers only one other unpersuasive argument against jurisdiction: It notes that Congress amended GHMSI's charter in 1993 to provide that GHMSI is domiciled in the District and subject to District insurance regulation, and from that fact it concludes that "Congress expressed its intent that GHMSI be governed by District law." Mot. 2, 10-13. This assertion, like the Red Cross argument before it, is correct but entirely irrelevant. It is true that GHMSI is domiciled in the District, that it is subject to regulation by the District, and that as a result certain issues regarding GHMSI's activities must be addressed under the District's insurance code. But those facts do not somehow destroy federal-question jurisdiction in a case, like this one, involving a dispute over the meaning of a federal law. Indeed, the District proves too much: Under its theory, the District could sue a corporation on acknowledged federal grounds and federal-question jurisdiction still would not exist; it would be nullified by the fact that the defendant is a District-regulated entity. That clearly is not the law. See Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 12 (1983) (holding that federal-question jurisdiction exists "if there appears on the face of the complaint some substantial, disputed question of federal law").

In another sort of case – one that implicated only the District's insurance laws and did not squarely raise contested questions about the interpretation of GHMSI's federal charter – jurisdiction would lie in the District's courts. But this is not that case. Here, the District by its own choice brought a Complaint based squarely on the meaning of GHMSI's federal charter – a meaning CareFirst and GHMSI vigorously dispute. Empire and Grable dictate that the District's Complaint may be litigated in federal court.

The District argues at the end of its brief that Congress acted pursuant to its "local legislative authority" in creating GHMSI and thus there is no federal interest at stake here.  Mot. 13.  This argument also lacks merit.  The cases the District cites have nothing to do with federal-question jurisdiction or removal.  See Wash. City Orphan Asylum, 798 A.2d at 1079 (discussing statutory construction); District Props. Assocs. v. District of Columbia, 743 F.2d 21, 26-27 (D.C. Cir. 1984) (discussing whether the District had exclusive jurisdiction over a District agency under the District's Administrative Procedure Act).  And they certainly do not support the novel proposition that a federal charter creating a Congressionally-designed corporation is devoid of "federal interest."  For the reasons discussed above and at pages 10-12 of the GHMSI Response, the federal question here is substantial under the tests laid down by Empire and Grable.

Finally, the District observes, in support of its "District regulation means District of Columbia courts" argument, that lawsuits "regarding the charitable status or nonprofit obligations of Blue Cross companies" often "have been resolved by state courts applying state law principles."  Mot. 12.  The District neglects, however, to acknowledge that none of those cited cases involved a federally-chartered health insurer, and thus none even arguably involved a question of federal law.  See GHMSI Response at 14 (noting that "GHMSI is, to our knowledge, the only insurer in the nation whose corporate existence is established by Congressional charter").  Here there is an actual and substantial dispute over the meaning of a federal enactment, and that makes all the difference.

## **CONCLUSION**

For all of the foregoing reasons, and those in the GHMSI Response, this Court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331, and removal was accordingly proper under 28 U.S.C. § 1441(b). The District's Motion to Remand should be denied. Pursuant to Local Rule 7(f), CareFirst and GHMSI request oral argument in support of this Opposition.

Respectfully Submitted,

Dated: August 25, 2008

By:_____/S/_____

Craig A. Hoover, Esq. (D.C. Bar No. 386918)
E. Desmond Hogan (D.C. Bar No. 458044)
**HOGAN & HARTSON L.L.P.**
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
Phone: (202) 637-5600
Fax: (202) 637-5910
E-mail: cahoover@hhlaw.com
E-mail: edhogan@hhlaw.com

Attorneys for Defendants
Group Hospitalization and Medical Services, Inc.
and CareFirst, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Opposition to Motion to Remand was served

this 25th day of August, 2008, by first-class mail, postage prepaid, upon:

        Peter J. Nickles
        George C. Valentine
        Office of the Attorney General
        441 4th Street, N.W., Suite 1130-N
        Washington, D.C. 20001

        Attorneys for Plaintiff District of Columbia

I further certify that a copy of the foregoing Opposition to Motion to Remand was served

this 25th day of August, 2008, by way of the Court's ECF system, upon:

        Ellen A. Efros
        Bennett Rushkoff
        Jacques P. Lerner
        Office of the Attorney General
        441 4th Street, N.W., Suite 1130-N
        Washington, D.C. 20001

        Attorneys for Plaintiff District of Columbia

                       /S/
                       E. Desmond Hogan