# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| **DISTRICT OF COLUMBIA,** | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 08-1218 (ESH) |
| **GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC.,** *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff District of Columbia ("the District") brings this action against defendants Group Hospitalization and Medical Services, Inc. ("GHMSI") and CareFirst, Inc. ("CareFirst"), alleging that defendants have willfully violated GHMSI's federal charter by operating GHMSI contrary to its public service mission and have breached GHMSI's charitable trust obligations by misappropriating its assets. (Compl. ¶¶ 27-31.) Plaintiff has filed a motion to remand the case to the Superior Court of the District of Columbia on the basis of lack of subject matter jurisdiction. For the reasons stated herein, plaintiff's motion to remand will be denied.

## BACKGROUND

Defendant GHMSI is an interstate non-profit corporation with more than one million certificate holders who live and work in the District, Maryland, and Virginia. (*Id.* ¶ 4.) GHMSI's primary business is selling health insurance and administering health plans. (*Id.*)

1

GHMSI was created by a congressional charter in 1939. *See* Pub. L. No. 395, 53 Stat. 1412 (1939). The federal charter sets forth GHMSI's corporate structure and purpose. Since 1984, GHMSI has been "authorized and empowered" by its charter

> (a) to enter into contracts with individuals or groups of individuals to provide for hospitalization of such individuals, upon payment of specified rates or premiums, and to issue to such individuals appropriate certificates evidencing such contracts; (b) to enter into contracts with hospitals and other providers for the care and treatment of such individuals, in accordance with the terms of such certificates; (c) to cooperate, consolidate, or contract with individuals, groups, or organizations interested in promoting and safeguarding the public health; and (d) to engage in any lawful business that is incidental to or supportive of the business and affairs of this corporation.

*Id.* at § 2; *see also* Pub. L. No. 105-149, 111 Stat. 2684 (1997); Pub. L. No. 98-493, 98 Stat. 2272 (1984). Section 3 of GHMSI's charter states that the corporation "shall not be conducted for profit, but shall be conducted for the benefit of [its] certificate holders." Pub. L. No. 395, § 3, 53 Stat. 1412 (1939). Section 8 declares GHMSI to be a "charitable and benevolent institution, and all of its funds and property shall be exempt from taxation other than taxes on real estate."[1] *Id.* at § 8.

In 1993, Congress amended GHMSI's charter to provide that the corporation shall be domiciled in the District and "shall be licensed and regulated by the District of Columbia in accordance with the laws and regulations of the District of Columbia." Pub. L. No. 103-127, §§ 138(a) and (b)(1), 107 Stat. 1336, 1349 (1993).

The dispute between the parties arose shortly after defendant CareFirst, a Maryland-based, non-profit holding company, assumed control of GHMSI in 1997. (Compl. ¶¶ 5, 9.) Under the management and control of CareFirst, GHMSI achieved dramatic growth in capital and, by 2007, GHMSI had a surplus in excess of $750 million. (*Id.* ¶¶ 9-14, 24.) According to

---

[1] In 1986, by act of Congress, GHMSI lost its tax exempt status for federal taxes. *See* 26 U.S.C. § 501(m)(1); 26 U.S.C. § 833(a)(1).

2

plaintiff, "the pursuit of profitable business and the building of asset value became GHMSI's bottom-line goals." (*Id.* 9.)

On June 24, 2008, plaintiff filed suit in the Superior Court of the District of Columbia. Plaintiff's complaint alleges that defendants "willfully violated GHMSI's charter" by operating GHMSI "for other than nonprofit purposes" and "contrary to its mission as a charitable and benevolent institution" (*id.* ¶¶ 27-28), and that defendants have used GHMSI's assets "inconsistently with [GHMSI's] charitable purposes," which constitutes a "breach of the charitable trust applicable to these assets." (*Id.* ¶¶ 29-31). Plaintiff seeks declaratory relief, an order of rehabilitation, and other equitable relief.

On July 16, 2008, defendants removed this action claiming federal question jurisdiction. Plaintiff's timely motion to remand is currently before the Court.

## STANDARD OF REVIEW

A defendant may properly remove a civil action from a state court when the federal district court has original subject matter jurisdiction. 28 U.S.C. § 1441(a). Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case "arises under" federal law if a "well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983). In such cases, "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). This doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law." *Id.*

When a plaintiff seeks a remand to state court following removal, "[t]he party opposing a motion to remand bears the burden of establishing that subject matter jurisdiction exists in federal court." *Int'l Union of Bricklayers & Allied Craftworkers v. Ins. Co. of the West*, 366 F. Supp. 2d 33, 36 (D.D.C. 2005); *see also Phillips v. Corr. Corp. of Am.*, 407 F. Supp. 2d 18, 20 (D.D.C. 2005) (placing the burden of proving jurisdiction on the defendant when the plaintiff files a motion to remand).

Moreover, since federal courts are courts of limited jurisdiction, a federal district court must strictly construe the scope of its removal jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941). A district court is required to resolve any doubts about the existence of federal jurisdiction in favor of remand to the state court. *Nwachukwu v. Karl*, 223 F. Supp. 2d 60, 66 (D.D.C. 2002).

**ANALYSIS**

**I.   THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THE MATTER**

Plaintiff contends that remand to the Superior Court is required because both of plaintiff's substantive causes of action arise under state, not federal, law. (*See* Compl. ¶¶ 27-31.) *See also* D.C. Official Code § 31-1310(9). Defendants oppose remand, arguing that the outcome of the case centers on a substantial question of federal law – the interpretation of GHMSI's congressional charter. *See* Pub. L. No. 105-149, 111 Stat. 2684 (1997).

The Supreme Court, while acknowledging that there is no "single, precise, all-embracing test for jurisdiction over federal issues embedded in state-law claims," set forth a three-pronged inquiry for federal question jurisdictional analysis: "does a state-law claim necessarily raise [1] a stated federal issue, [2] actually disputed and substantial, [3] which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial

4

responsibilities[?]" *Grable*, 545 U.S. at 314 (internal quotation omitted); *see also Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006).

Applying this framework, this Court concludes that federal jurisdiction exists. The complaint necessarily raises a disputed federal issue, that issue is substantial, and this Court's assertion of jurisdiction would not unduly alter the federal-state balance. The matter was therefore properly removed.

### A. The Complaint Necessarily Raises a Disputed Federal Issue

Under *Grable*, the Court must first determine whether the complaint raises a disputed issue of federal law, the resolution of which is necessary to grant the relief plaintiff seeks. 545 U.S. at 314.

As an initial matter, the Court notes that GHMSI's charter constitutes federal law. The charter that created GHMSI was enacted by Congress. As such, the charter is a "legislative act[]" that must be construed and interpreted just like any other federal statute. *Bd. of Dirs., Wash. City Orphan Asylum v. Bd. of Trs., Wash. City Orphan Asylum*, 798 A.2d 1068, 1080 (D.C. 2002); *see also Supreme Lodge K. of P. v. Mims*, 241 U.S. 574, 578 (1916) (denying motion for jurisdictional dismissal because "the case necessarily will turn on the construction of the present charter, an act of Congress").[2]

---

[2]Plaintiff is correct that federal jurisdiction does not result merely from the fact that GHMSI is a federally-chartered entity. *See Am. Nat'l Red Cross v. S.G.*, 505 U.S. 247, 255 (1992) (holding a federal charter automatically confers original federal court jurisdiction "if, but only if, [its sue-and-be-sued provision] specifically mentions the federal courts"). Both parties agree that GHMSI's charter's sue-and-be-sued provision does not contain the "federal court" language required to provide automatic, across-the-board access to the federal courts for federally chartered entities under *Red Cross*. (Pl.'s Mot. at 8-10; Def.'s Opp'n to Mot. at 7-9.) *See* Pub. L. No. 395, § 1, 53 Stat. 1412 (1939) (sue-and-be-sued provision). The absence of the "federal court" language in GHMSI's charter, however, does not settle the jurisdictional question. Federal question jurisdiction may still exist because it is "a separate and independent jurisdictional grant" from the jurisdictional basis discussed in *Red Cross*. 505 U.S. at 258.

5

GHMSI's federal charter forms the basis of plaintiff's claims.  Plaintiff admits, as it must, that "[b]oth counts rely in part on provisions in GHMSI's charter." (Pl.'s Mot. at 6.)  Count I, entitled "Willful Violation of Charter," alleges that defendants "willfully violated GHMSI's charter" and are therefore subject to rehabilitation under D.C. Code § 31-1310(9).  (Compl. ¶ 28.)  Count II alleges that defendants breached GHMSI's common law charitable trust duty "[b]y using [its] assets inconsistently with its charitable purposes." (Compl. ¶ 31.)  The complaint further alleges that GHMSI's "charitable purpose" is defined by its federal charter.  (Compl. ¶¶ 1 (alleging that GHMSI and CareFirst acted "contrary to GHMSI's legal obligations as a charitable and benevolent institution"), 7 (quoting GHMSI's charter declaring GHMSI "to be a charitable and benevolent institution" that "shall not be conducted for profit, but shall be conducted for the benefit of [its] certificate holders"), 8 (alleging that "[u]nder the aforementioned Charter provisions . . . GHMSI [is required] to treat the promotion of public health as its bottom-line mission and to pursue business goals . . . solely as means of advancing this mission").)  Moreover, plaintiff asks the Court to "[d]eclare that Defendants have violated GHMSI's charter" and to "[e]njoin Defendants from further violations of GHMSI's charter." (Compl. Prayer for Relief ¶¶ a, b.)

Plaintiff's assertion (*see* Pl.'s Mot. at 10, 15 n.37) that the case can be resolved without interpretation of GHMSI's federal charter is misguided.[3]  The crux of this dispute relates to the meaning of crucial language in GHMSI's federal charter.  Here, as in *Grable*, this case "really

---

[3] Plaintiff provides several examples where disputes over the charitable status or nonprofit obligations of health insurers were resolved by state courts applying only state law.  (*See* Pl.'s Mot. at 12 (citing cases).)  Yet, none of these cases involves a *federally-chartered* health insurer. *See Blue Cross & Blue Shield of Kansas City v. Nixon*, 26 S.W.3d 218 (Mo. Ct. App. 2000); *Abbot v. Blue Cross & Blue Shield of Texas*, 113 S.W.3d 753 (Tex. Ct. App. 2003); *Ciamaichelo v. Independence Blue Cross*, 909 A.2d 1211, 1217 (Pa. 2006); *In re Excess Surplus Status of Blue Cross & Blue Shield of Minnesota*, 624 N.W.2d 264 (Minn. 2001).

6

and substantially involv[es] a dispute . . . respecting the validity, construction, or effect" of a congressional act – *i.e.*, GHMSI's charter. 545 U.S. at 312-13, 315; *cf. Empire*, 547 U.S. 677 (declining to exercise federal question jurisdiction where the federal statute was not a central issue and no interpretation of federal law was required). Because plaintiff cannot obtain relief on its state law claims without this Court interpreting GHMSI's federal charter, plaintiff's complaint "necessarily raise[s] a stated federal issue." *Grable*, 545 U.S. at 314.

Furthermore, there is no doubt that the federal issue raised here is "actually disputed." *Grable*, 545 U.S. at 314. The parties disagree over the correct reading of GHMSI's federal charter. Plaintiff contends that the charter expressly requires GHMSI to operate as a charitable and benevolent institution and to pursue business goals solely as a means of advancing its mission of promoting public health. (Compl. ¶ 8.) Defendants argue that the charter requires that GHMSI "operate for the benefits [sic] of its subscribers, not for the benefit of the public at large." (Compl. ¶¶ 14, 23.)

Because a federal enactment is at issue here, and there is an actual dispute over the meaning of the charter, the first prong of *Grable*'s jurisdictional inquiry is satisfied.

### B. The Federal Issue is Substantial

The Court next considers whether the disputed federal issue is substantial. "[F]ederal question jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Gramble*, 545 U.S. at 313.

Defendants convincingly argue that the federal government has a strong interest in this Court's determination of GHMSI's obligations under its federal charter. In support of this contention, defendants note that the statutory interpretation of GHMSI's federal charter (1)

7

concerns the core mission and obligations of GHMSI, an entity that Congress created; (2) is a "nearly pure issue of law" that "could be settled once and for all" by an assertion of jurisdiction, *Empire*, 547 U.S. at 700; and (3) affects hundreds of thousands of certificate holders in three jurisdictions. (Def.'s Resp. to Ct.'s Order at 13-14.) Additionally, Congress has indicated its direct interest in the organization by amending GHMSI's charter several times and by authoring committee reports opining on GHMSI's "primary mission." (*Id.* 13.) *See* Pub. L. No. 395, § 11, 53 Stat. 1412 (1939) ("This Act may be altered, amended, or repealed at the pleasure of the Congress."); Pub. L. No. 105-149, 111 Stat. 2684 (Dec. 16, 1997); Pub. L. No. 103-127, 107 Stat. 1336 (Oct. 29, 1993); Pub. L. No. 98-493, 98 Stat. 2272 (Oct. 17, 1984).

The Court therefore concludes that the contested interpretation of the federal charter involves a substantial federal issue.

### C. Jurisdiction Would Not Threaten the Federal-State Balance

Finally, *Grable* instructs that federal question jurisdiction must be "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." 545 U.S. at 313-14.

Providing a federal forum for the resolution of the disputed federal issue in this case will not disrupt "the sound division of labor between state and federal courts." *Id.* To this Court's knowledge, GHMSI is the only insurer in the nation whose corporate existence is established by congressional charter. Thus, retaining this case would not herald an enormous shift of traditionally state cases into federal courts. Here, even more so than in *Grable*, exercising federal jurisdiction to resolve genuine disagreement over certain provisions of GHMSI's federal charter "will portend only a microscopic effect on the federal-state division of labor." *Id.* at 315.

Moreover, the interpretation of a federal charter is not a "fact-bound" and "contract-derived" issue that would drag the federal court into small disputes more properly addressed in state court. *Cf. Empire*, 547 U.S. at 700-01 (addressing an insurer's contract-derived claim for reimbursement from the proceeds of a federal worker's state-court-initiated tort litigation).

In sum, "[g]iven the absence of threatening structural consequences" and the clear interest in the availability of a federal forum, "there is no good reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of [these] state-law . . . claim[s]." *Grable*, 545 U.S. at 318-19.

## CONCLUSION

For the foregoing reasons, the Court finds that federal question jurisdiction exists under 28 U.S.C. § 1331. Removal is therefore proper under 28 U.S.C. § 1441(a)-(b), and plaintiff's motion is DENIED.

                                                                                          /s/
                                           ELLEN SEGAL HUVELLE
                                           United States District Judge

Date:   September 15, 2008